# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | |
|---|---|
| **HENRI SCHULTZ,** | **Civil Case Number:** |
| **Plaintiff,** | |
| **-v-** | <u>**CIVIL ACTION**</u> |
| **EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LCC, CITIBANK, N.A., U.S. BANK, N.A., BARCLAYS BANK DELAWARE and CAPITAL ONE BANK (USA), N.A.,** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

## <u>INTRODUCTION</u>

1.      Identity theft has long been a widespread problem in this country.  Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2]

2.      Plaintiff, Henri Schultz, has been the unfortunate victim of identity theft. Specifically, upon information and belief, Plaintiff's mother has been fraudulently opening various

---

[1] *See, Sloane v. TransUnion Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).

[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone.  *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission— Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).

accounts using Plaintiff's PII and Social Security Number, without his knowledge or authorization. These accounts have destroyed Mr. Schultz's credit with each of them reporting many of these accounts negatively.

3. Rather than working with Mr. Schultz to rectify this unfortunate situation, each of the Defendants refuse to remove these fraudulent accounts from his credit report, despite the Plaintiff specifically disputing these fraudulent items. Instead, the Defendants have continued to willfully and negligently harm the Plaintiff's credit report by continuing to associate these fraudulent accounts with the Plaintiff, thereby severely impacting Plaintiff's life and his ability to obtain credit.

4. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging Experian, TransUnion, Equifax, Barclays, Capital One, Citibank and US Bank have been negligently, recklessly and knowingly disseminating false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with these fraudulent accounts, particularly after the Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

5. Plaintiff further alleges that the consumer reporting agencies Equifax, Experian and Transunion failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

6. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

**JURISDICTION**

7. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this judicial District pursuant to 28 U.S.C. 1391(b)(2).

**PARTIES**

9.      Plaintiff, Henri Schultz ("Plaintiff"), is a resident of Ozark, Missouri and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10.     Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.  Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11.     Experian is a corporation with its headquarters located in Costa Mesa, California.

12.     Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers.  Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13.     Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

14.     Defendant TransUnion, LLC ("TransUnion") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit

reports concerning hundreds of millions of consumers. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

15. TransUnion is a limited liability company with its principal place of business at 555 W. Adams Street, Chicago, IL 60661

16. Defendant U.S. Bank, N.A. ("US Bank") is a financial services company incorporated in the State of Delaware with its principal place of business in Minneapolis, Minnesota.

17. Defendant Citibank, N.A. ("Citibank") is a national bank with its headquarters located in New York.

18. Defendant Barclays Bank Delaware("Barclays") is a financial institution headquartered in Delaware.

19. Defendant Capital One Bank (USA), N.A. ("Capital One") is a national bank with its headquarters in Virginia.

**FACTUAL ALLEGATIONS**

20. Sometime in early 2023, Plaintiff discovered he was the victim of identity theft. Around that same time, Plaintiff noticed that a number of accounts were appearing on his consumer credit reports from Experian, Equifax and TransUnion, stemming from accounts which were opened without his knowledge or authorization to do so. These accounts include:

- MACYS/CITIBANK Account # ending in 0099 (the "Macys Account");

- CITICARDS/CBNA Account # ending in 4257 – (the "Citicards Account");

- THD/CBNA Account # ending with 8143 – (the "THD/CBNA Account").

-4-

- CAPITALONE/WALMART Account # ending with 8143 – (the "Cap1 Account")

- US BANK Account # ending with 1518 – (the "US Bank Account")

- BARCLAYS BANK DELAWARE Account # ending with 8194 – (the "Barclays Account")

21. Plaintiff took appropriate action, including completing a sworn FTC Identity Theft Affidavit, in which he listed these accounts as they were appearing on his credit reports despite the fact that they were not his and he had never opened them.

22. Accordingly, on or about March 3, 2023, Plaintiff disputed these fraudulent accounts with Equifax, TransUnion and Experian, asserting that the accounts were not his, that Plaintiff was the victim of identity theft, and that this information should be removed or blocked.

23. With those disputes, Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

24. Following receipt of Plaintiff's dispute, Experian failed to conduct a reasonable investigation, correct or remove the fraudulent Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts from the Plaintiff's credit file. Instead, that information is still being reported to this day.

25. Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

26. Similarly, TransUnion refused to investigate, correct or remove the fraudulent Macys, Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts from the Plaintiff's credit file. Instead, that information is still being reported to this day.

27. Upon information and belief, TransUnion had all the information they needed to

locate, investigate, and correct this inaccurate information, but just failed to do so

28. Equifax also refused to investigate, correct or remove the fraudulent Macys, Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts from the Plaintiff's credit file. Instead, that information is still being reported to this day.

29. Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so

30. Equifax, Experian, TransUnion, Barclays, Citibank, US Bank, and Capital One were each notified of the respective disputes, but refused to investigate and/or remove inaccurate reporting.

31. At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under section 1681s, 1681i and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

32. Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

33. In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

34. As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and the defamatory harm that Plaintiff has suffered as a result of having this fraudulent, negative information attributed to him and disseminated to creditors. For example, Plaintiff has been denied credit due to these derogatory inaccuracies, and has been offered credit on less favorable terms.

-6-

35. Defendants' violations of the FCRA further caused the Plaintiff great distress, anger, annoyance and frustration in his daily life, and subjected the Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free.

**COUNT I**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST TRANSUNION**

36. All preceding paragraphs are realleged.

37. At all times pertinent hereto, TransUnion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

38. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

39. On or about March 3, 2023, the Plaintiff initiated a dispute with TransUnion requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Macys, Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

40. However, Defendant TransUnion never adequately investigated the Plaintiff's disputes, as required by the FCRA.

41. Instead, TransUnion, after either conducting no investigation or failing to conduct

-7-

a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

42. As a direct and proximate result of TransUnion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

<u>**COUNT II**</u>
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681c-2**
**AGAINST TRANSUNION**

43. All preceding paragraphs are realleged.

44. On or about March 3, 2022, Plaintiff initiated a dispute with TransUnion requesting that they correct and remove the fraudulent Macys, Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts, as these accounts were fraudulently opened by an individual other than the Plaintiff.

45. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

46. TransUnion refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

47. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, TransUnion continued to report this fraudulent information.

48. As a direct and proximate result of TransUnion's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

-8-

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EXPERIAN**

49.    All preceding paragraphs are realleged.

50.    At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

51.    The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
>
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

52.    On or about March 3, 2023, the Plaintiff initiated a dispute with Experian requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened these accounts.

53.    However, Experian never adequately investigated the Plaintiff's disputes, as required by the FCRA.

54.    Instead, Experian, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

Case 6:23-cv-03272-SRB    Document 1    Filed 08/29/23    Page 9 of 16

55.     As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

**<u>COUNT IV</u>**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

56.     All preceding paragraphs are realleged.

57.     At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

58.     The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

59.     On or about March 3, 2023, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent Macys, Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts. Plaintiff provided information and documentation showing that he was the victim of identity theft and had not opened this account.

60.     However, Defendant Equifax never adequately investigated the Plaintiff's disputes, as required by the FCRA.

61.     Instead, Equifax, after either conducting no investigation or failing to conduct a

-10-

reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

62.     As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

**COUNT V**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681c-2**
**AGAINST EQUIFAX**

63.     All preceding paragraphs are realleged.

64.     On or about March 3, 2022, Plaintiff initiated a dispute with Equifax requesting that they correct and remove the fraudulent Macys, Barclays, Cap1, Citicards, THD/CBNA and US Bank Accounts, as these accounts were fraudulently opened by an individual other than the Plaintiff.

65.     In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

66.     Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

67.     As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

68.     As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

-11-

**COUNT VI**

**FAILURE TO INVESTIGATE DISPUTE**
**FCRA, 15 U.S.C. § 1681s-2(b)**
**AGAINST CITIBANK**

69. All preceding paragraphs are re-alleged.

70. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

71. On or about March 3, 2023, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the accounts being reported by Citibank.

72. Upon information and belief, Citibank received notice of these disputes from the credit bureaus.

73. Citibank was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

74. Even after the Plaintiff properly disputed these accounts with the credit reporting agencies, Citibank refused to conduct a reasonable investigation and continued inaccurately reporting the multiple fraudulent accounts on Plaintiff's credit reports.

75. Citibank's conduct violated section 1681s-2(b) of the FCRA.

76. As a result of Citibank's conduct, Plaintiff was harmed, as discussed above.

**COUNT VII**

**FAILURE TO INVESTIGATE DISPUTE**
**FCRA, 15 USC § 1681s-2(b)**
**AGAINST BARCLAYS**

77. All preceding paragraphs are re-alleged.

78. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

-12-

79. On or about March 3, 2023, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by Barclays.

80. Upon information and belief, Barclays received notice of these disputes from the credit bureaus.

81. Barclays was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

82. Even after the Plaintiff properly disputed this account with the credit reporting agencies, Barclays refused to conduct a reasonable investigation and continued inaccurately reporting the fraudulent account on Plaintiff's credit report.

83. Barclays's conduct violated section 1681s-2(b) of the FCRA.

84. As a result of Barclays's conduct, Plaintiff was harmed, as discussed above.

## COUNT VIII

### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 USC § 1681s-2(b)
### AGAINST US BANK

85. All preceding paragraphs are re-alleged.

86. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

87. On or about March 3, 2023, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by US Bank.

88. Upon information and belief, US Bank received notice of these disputes from the credit bureaus.

89. US Bank was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

90. Even after the Plaintiff properly disputed this account with the credit reporting

-13-

agencies, US Bank refused to conduct a reasonable investigation and continued inaccurately reporting the fraudulent account on Plaintiff's credit report.

91.     US Bank's conduct violated section 1681s-2(b) of the FCRA.

92.     As a result of US Banks's conduct, Plaintiff was harmed, as discussed above

## COUNT IX
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 USC § 1681s-2(b)
### AGAINST CAPITAL ONE

93.     All preceding paragraphs are re-alleged.

94.     Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

95.     On or about March 3, 2023, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by Capital One.

96.     Upon information and belief, Capital One received notice of these disputes from the credit bureaus.

97.     Capital One was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

98.     Even after the Plaintiff properly disputed this account with the credit reporting agencies, Capital One refused to conduct a reasonable investigation and continued inaccurately reporting the fraudulent account on Plaintiff's credit report.

99.     Capital One's conduct violated section 1681s-2(b) of the FCRA.

100.     As a result of Capital One's conduct, Plaintiff was harmed, as discussed above

## DEMAND FOR TRIAL BY JURY

101.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

-14-

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A.  Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B.  Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C.  A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D.  Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E.  Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: August 24, 2023

By:  /s/ Michael Rapp
Michael Rapp, Esq.
STECKLEIN & RAPP CHARTERED
1503 Westport Road
Kansas City, MO 64111
(913) 371-0727 ext 103
mr@giveyourselfcredit.com


Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
Pro Hac Vice Motion Forthcoming
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282
yzelman@marcuszelman.com

-15-

*Attorneys for Plaintiff*

-16-